UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 2:16-cr-00036-NT |
| ) | |
| THEODORE SEALY, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION FOR RECONSIDERATION
AND MOTION FOR COMPASSIONATE RELEASE**

Defendant Theodore Sealy has filed a motion seeking reconsideration of my earlier order denying his request for compassionate release and bringing a new request for compassionate release ("**Def.'s Mot.**") (ECF No. 196). For the reasons stated below, the Defendant's motion is **DENIED**.

**BACKGROUND**

On August 3, 2016, Mr. Sealy pleaded guilty to Count One of the Superseding Indictment, conspiracy to distribute and possess with the intent to distribute cocaine base, oxycodone, and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Superseding Indictment (ECF No. 55); Minute Entry (ECF No. 70). On March 6, 2017, I sentenced him to eighty-four months imprisonment, followed by five years of supervised release. Judgment (ECF No. 159).

Mr. Sealy served the first half of his sentence in prison before being moved by the Bureau of Prisons ("**BOP**") to home confinement on October 28, 2020, due to his medical conditions and the increased risk of COVID-19 in an institutional setting.

Def.'s Emergency Mot. for Compassionate Release and Reduction of Sentence from Home Confinement to Time Served ("**Def.'s First Mot.**") 1 (ECF No. 187). On December 29, 2021, the Defendant filed a motion seeking compassionate release, meaning a release from home confinement. Def.'s First Mot. The primary basis for that motion was that the Defendant contended he could not adequately treat his medical conditions while on home confinement because of the strictures of supervision that that punishment entails. Def.'s First Mot. 1–3; First Decl. of Theodore Sealy ("**First Sealy Decl.**") 1–2 (ECF No. 187-1). Specifically, he took issue with the requirement that he receive advance approval for medical appointments and procedures, which he said did not allow him to be put on wait lists for specialist appointments and procedures and had delayed the diagnosis and treatment of his ongoing health issues. First Sealy Decl. 1–2; Def.'s Reply to Gov't's Resp. to Def.'s First Mot. 4 (ECF No. 194).

On February 8, 2022, I denied the motion, finding that the purported deficiencies in care that Mr. Sealy had identified were illusory and that he had thus failed to establish an extraordinary and compelling reason justifying his release. Order on Mot. for Compassionate Release ("**Feb. Order**") 8–11 (ECF No. 195). In denying his motion, it was also an important aspect of my decision that Mr. Sealy was "not in a carceral environment where he would be unable to mitigate his risk of infection." Feb. Order 6.

Sixteen days after I issued my order, the Defendant filed a motion that he characterized as a "Motion for Reconsideration and Renewed Emergency Motion for

2

Compassionate Release and Reduction of Sentence." Def.'s Mot. The impetus for this motion was that—unbeknownst to me and to counsel—in the weeks prior to the issuance of my February order, Mr. Sealy had had his home confinement revoked and had been returned to prison. Def.'s Mot. 1–2; Def.'s Reply to Gov't's Obj. to Def.'s Mot. 1–2 ("**Def.'s Reply**") (ECF No. 198). The parties dispute the circumstances surrounding Mr. Sealy's return to custody and the validity of the revocation of his home confinement. The Defendant has emphasized "that he is not asking this Court to adjudicate the [propriety of his] remand to the halfway house and to prison." Def.'s Status Report Regarding Def.'s Mot. ("**Def.'s Status Report**") 2 (ECF No. 200). And, as I explain in greater detail below, because Mr. Sealy's risk of infection under the current circumstances appears low (and thus release is unwarranted), I find it unnecessary to delve into the details of this dispute.

After the Defendant filed his second motion (the motion now before me), the Government objected to my consideration of the motion without requiring Mr. Sealy to exhaust his administrative remedies. Gov't's Obj. to Def.'s Mot. (ECF No. 197). The Defendant responded that, although he did not believe exhaustion was required, he had already begun the process to exhaust his administrative remedies. Def.'s Reply 2–4. I thus held Mr. Sealy's motion in abeyance to wait for this exhaustion to be complete. Order (ECF No. 199). Mr. Sealy has now exhausted his administrative remedies, the parties have filed supplemental briefing (Def.'s Status Report; Gov't's Resp. to Def.'s Status Report (ECF No. 201); Def.'s Reply Regarding Def.'s Status Report (ECF No. 202)), and the Defendant's motion is ripe for my review.

## ANALYSIS

Congress enacted the compassionate release statute[1] to allow district courts to modify sentences of imprisonment, as relevant here, upon finding that: (1) extraordinary and compelling reasons warrant modification, (2) the modification accords with the § 3553(a) sentencing factors, and (3) the modification is consistent with "applicable policy statements" of the Sentencing Guidelines. I focus here on the question of whether there exist extraordinary and compelling reasons warranting Mr. Sealy's release.

The compassionate release statute itself does not define what constitutes an "extraordinary and compelling reason[ ]" justifying a sentence modification. *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021); *see* 18 U.S.C. § 3582(c). However, the United States Sentencing Commission has done so in the Commentary

---

[1] Title 18, United States Code, Section 3582(c)(1)(A) governs "[m]odification of an imposed term of imprisonment." Prior to the passage of the First Step Act of 2018, only the Director of the Bureau of Prisons ("**BOP**") could move for modification of a sentence. *See United States v. Ruvalcaba*, 26 F.4th 14, 17 (1st Cir. 2022). In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of an imposed term of imprisonment from the courts directly. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Section 3582 now provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

to its policy statement on compassionate release, located at § 1B1.13 of the sentencing guidelines. In discussing medical-based reasons, the Commission notes that extraordinary and compelling reasons exist where:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is —
>
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> . . . .

*Id.* § 1B1.13 Commentary n.1. The Commentary addresses age-based and family-based reasons in subdivisions (B) and (C), and then provides in subdivision (D): "**Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13.

The Defendant does not argue that subdivision (A), (B), or (C) applies. Instead, he argues that he has "other" extraordinary and compelling reasons that warrant the

application of subdivision (D). By its terms, subdivision (D) only allows the Director of the BOP to consider whether "other" extraordinary and compelling reasons exist. However, this limitation predates Congress's enactment of the First Step Act, which granted incarcerated individuals the right to file motions for compassionate release in the event that the BOP declined or delayed doing so. *United States v. Saccoccia*, 10 F.4th 1, 3–4, 7 (1st Cir. 2021). Because the Sentencing Commission has lacked a quorum for the last several years, it has not yet had the opportunity to consider how the implementation of the First Step Act might affect its policy guidance in § 1B1.13. *Id.* at 7. As a result, this out-of-date policy statement is not currently applicable to prisoner-initiated motions. *United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022). And it is currently the case that "district courts—when adjudicating prisoner-initiated motions for compassionate release—have discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release." *Id.* at 23. Although, the current policy statement may still "serve as a non-binding reference." *Id.*

This does not mean that I have unbounded discretion in evaluating whether the Defendant has put forward an extraordinary and compelling reason justifying his release. In particular, his asserted justification for why compassionate release is warranted must truly be "extraordinary" and "compelling." *See id.* A reason is "extraordinary" if it "is beyond the mine-run either in fact or in degree." *Canales-*

6

*Ramos*, 19 F.4th at 566. Meanwhile, a "compelling" reason is one "that is both powerful and convincing." *Id.* at 567.

The Defendant primarily relies on his medical conditions and need for treatment as a justification for his sentence reduction. "[B]ut not every complex of health concerns is sufficient to warrant compassionate release. This remains true even in the midst of the COVID-19 pandemic." *Saccoccia*, 10 F.4th at 5. It is only if "the defendant's situation constitutes the type of 'extreme hardship' that the compassionate-release statute is designed to ameliorate" that a sentence reduction is warranted. *Id.* at 4.

There is no dispute that the Defendant has a litany of medical conditions, which he has substantiated with medical records. Def.'s First Mot. 2; Medical Records (ECF No. 188-1). At least one of these conditions (asthma) is known to be a preexisting condition that can make it more likely for someone "to get very sick with COVID-19." *See* Centers for Disease Control and Prevention, "COVID-19 (Coronavirus Disease), People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 13, 2022).[2] The Government has not challenged the Defendant's evidence of his poor health, and, indeed, the BOP previously found that Mr. Sealy was sick enough that

---

[2] The Defendant asserted in his original motion ("**Def.'s First. Mot.**") that he is "immunocompromised." Def.'s First Mot. 8 (ECF No. 187). The Government points out that he has failed to identify which of his conditions purportedly makes him immunocompromised. Gov't's Obj. to Def.'s First Mot. 4 (ECF No. 192). While it remains unclear why Mr. Sealy believes he is immunocompromised, it may be related to his undiagnosed autoimmune disorder, which he says remains undiagnosed at least in part because the BOP has put him back into custody. I assume for the sake of this Order that Mr. Sealy is immunocompromised.

7

it considered it appropriate to release him to home confinement pursuant to the CARES Act. Gov't's Obj. to Def.'s First Mot. 4 n.5 (ECF No. 192); *see* Memorandum from the Att'y Gen. to the Dir. of Bureau Prisons 1–2 (Mar. 26, 2020), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (directing BOP to evaluate whether "some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement" should be released to home confinement).

But while Mr. Sealy may be medically more susceptible to a severe case of COVID-19, this, of course, is only relevant to the extent he is put in a situation where he is at an elevated risk of contracting the virus. It does not appear that he is in such a situation. I recognize that cases have been ticking up across the country, and, as the Defendant notes, on May 2, 2022, Lewisburg USP (the facility where Mr. Sealy is incarcerated) increased its operational level to a Level 3. Def.'s Reply Regarding Def.'s Status Report 2. This change was made "due to a high community transmission rate of COVID-19 within the local area" of the prison. May 2, 2022, Notice to Inmate Population (ECF No. 202-2). However, what has not changed are the case counts inside the walls of Lewisburg itself. As of April 28, 2022, Lewisburg was reporting zero COVID-19 cases among inmates or staff. Gov't's Resp. to Def.'s Status Report 4. That remains true today. Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited May 13, 2022). In other words, while cases are increasing in Lewisburg, Pennsylvania, so far, the BOP has been doing an adequate job of keeping cases out of the prison. So, I have no reason to conclude that

Mr. Sealy's health is in jeopardy at this time, and I find that the Defendant is unable to establish an extraordinary and compelling reason justifying his release. *See United States v. Baptiste-Harris*, Docket No. 2:18-cr-00127-NT-1, 2021 WL 1583081, at *3 (Apr. 22, 2021) ("[W]hatever risk of reinfection that might exist is mitigated by the existence of so few infections at Mr. Baptiste-Harris's facility."); *United States v. Greene*, Docket No. 1:17-cr-00012-NT-1, 2020 WL 4475892 (D. Me. Aug. 4, 2020), at *4 ("The decreasing number of infections at FMC Devens also weighs against a finding that extraordinary and compelling circumstances warrant release.").[3]

While the level of infections at Mr. Sealy's place of incarceration is an important factor in evaluating whether he has put forward an extraordinary and compelling reason justifying release (and in this case it is dispositive), I recognize that it is volatile. Should the circumstances change (e.g., if the case numbers at Lewisburg precipitously increase or if Mr. Sealy is moved to a facility with elevated case numbers), the Defendant is free to renew his motion.

---

[3] The Defendant and the Government squabble over a few additional issues, including who is at fault for the Defendant remaining unvaccinated. I have previously noted that a defendant's decision to decline vaccination against medical recommendations weighs against granting a motion for compassionate release premised on the risks of a severe COVID-19 infection. *See United States v. Baptiste-Harris*, Docket No. 2:18-cr-00127-NT-1, 2021 WL 1583081, at *2 (Apr. 22, 2021) ("Mr. Baptiste-Harris is not free to pick and choose the medical recommendations he wishes to follow. He cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine."). But here, Mr. Sealy asserts that he has attempted to get a medical recommendation as to whether he should get vaccinated despite his undiagnosed autoimmune disorder but that BOP has not responded. Accordingly, I do not hold Mr. Sealy's unvaccinated status against him, and I encourage him to keep trying to get an opinion on whether he should receive the vaccination given his condition.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for compassionate release is **DENIED** without prejudice.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: May 13, 2022

10